**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RHODES LIFE INSURANCE COMPANY** | **CIVIL ACTION** |
| **versus** | **No. 08-4953** |
| **MENDY PROPERTIES, L.C., ET AL.** | **SECTION: "I"/4** |

## ORDER AND REASONS

Before the Court is a motion to remand the above-captioned matter for lack of subject matter jurisdiction. For the following reasons, the motion is **GRANTED.**

## BACKGROUND

In July, 2008, plaintiff, Rhodes Life Insurance Company ("Rhodes"), filed a petition against defendants, Mendy Properties, L.C., Gabriel Emmanuel Mendy, Edward Bissau Mendy, and Cheryl Ann Gerard Mendy, in Orleans Parish Civil District Court to enforce a collateral mortgage affecting property in Orleans Parish.[1] The petition alleges that defendants defaulted on their obligations with respect to a hand note they executed in favor of Rhodes on December 10, 2003.[2] As a result of the alleged default, Rhodes' petition seeks to collect on a collateral mortgage and collateral

---

[1] Rec. Doc. No. 1-2.

[2] *Id.* at paras. XI-XIII. The petition alleges that the hand note was signed by Edward Bissau Mendy on behalf of Mendy Properties, L.C. as well as by Edward Bissau Mendy and Cheryl Ann Gerard Mendy, individually, with Gabriel Emmanuel Mendy as guarantor. *Id.* at para. XI.
  The collateral mortgage and collateral mortgage note are dated November 19, 1998. *Id.* at paras. V-VII.

1

mortgage note that were assigned to Rhodes on December 12, 2003 by Regions Bank.

On November 17, 2008, defendants removed the lawsuit to this Court.[3] The notice of removal alleges that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Rhodes filed a motion to remand.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c). When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of establishing jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden."). The removal statute is strictly construed. *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 U.S. Dist. LEXIS 12013, at *2 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)). Doubts concerning removal are to be

---

[3] Rec. Doc. No. 1. The Court notes that the notice of removal does not indicate that Cheryl Ann Gerard Mendy joined or consented to removal.

2

construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

**II. <u>DISCUSSION</u>**

    **A. <u>Federal Question Jurisdiction</u>**

Defendants contend that this Court has jurisdiction over this action because Rhodes' claims arise under a federal statute, i.e., the Fair Debt Collection Practices Act ("FDCPA"), and that Rhodes' claims, therefore, arise under federal law. Defendants argue that Rhodes cannot proceed with its state law foreclosure claims without stating a cause of action under the FDCPA. Rhodes responds that it has not asserted a cause of action under the FDCPA, but that it merely attached notice to the defendants in compliance with the FDCPA.

United States District Courts have original subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[I]t is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318, 327 (1987) (stating that subject matter jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly

pleaded complaint"). An affirmative defense that raises a federal question is insufficient.[4] *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002). "Even if a plaintiff has a federal cause of action, he 'may avoid federal jurisdiction by exclusive reliance on state law.'" *Id.* (quoting *Caterpillar*, 4107 S. Ct. at 2429)). Therefore, a petition that does not assert a federal cause of action on its face may only be removed "where federal law completely preempts a plaintiff's state-law claim." *Id.* (quoting *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998)).

As Rhodes contends, its petition attaches a "Notice Pursuant to the Fair Debt Collection Practices Act."[5] The notice provides information as required by the FDCPA, 15 U.S.C. §1692g(a), including the amount of the debt, the name of the creditor, statements concerning the debtor's right to dispute the validity of the debt within thirty days of receipt of the notice and the debtor's right to obtain information about the original creditor.[6]

The United States Court of Appeals for the Sixth Circuit rejected a similar argument that the mere attachment of a notice of a debtor's rights under the FDCPA conferred federal question

---

[4]Defendants' removal notice asserts affirmative defenses as a basis for jurisdiction. Defendants' opposition memorandum, however, does not argue such defenses as a basis for jurisdiction.

[5]Rec. Doc. No. 1-2, p. 5, para. XIX.

[6]*Id.*

4

jurisdiction. *Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 915 (6th Cir. 2007) ("The notice therefore cannot reasonably be construed as invoking a federally-created cause of action or as raising an 'actually disputed and substantial' federal issue." (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005))). Notwithstanding defendants' argument that the "supposed notice took up more than 20% of the complaint and encompassed...six out of twenty four paragraphs," Rhodes' petition does not assert violations of the FDCPA. As in *Smith*, Rhodes' petition simply includes notice of defendants' right to contest the validity of the debt and to obtain information with respect to the original creditor. The fact that this notice referred to, and was made pursuant to, the FDCPA does not invoke federal question jurisdiction as Rhodes has not pled violations of the FDCPA. *See id.; see also Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 694 (5th Cir. 1995)("[S]ubject matter jurisdiction cannot be created by simple reference to federal law."); *Christiason v. Merit Tex. Props., L.L.C.*, 393 F. Supp. 2d 435, 437 (N.D. Tex. 2005)(finding that "a mere reference to Title VII violations" in an EEOC charge that the plaintiff attached to his petition did not establish federal question jurisdiction where the plaintiff chose not to plead such violations).

**B. Bankruptcy Jurisdiction**

Defendants also contend that this Court has subject matter jurisdiction because the United States Bankruptcy Court for the Eastern District of Louisiana retained jurisdiction over Rhodes' claims when the court discharged defendants' debts in bankruptcy pursuant to 11 U.S.C. § 727.[7] Defendants argue that the source of this Court's jurisdiction is 28 U.S.C. § 1334, a statute that defendants did not cite as a basis for jurisdiction in their removal notice.

Section 1334 provides the United States District Courts and state courts with concurrent jurisdiction over all civil actions "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(b)("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or rising in or related to cases under title 11.").

Cases "arising under title 11" include proceedings that "involve a cause of action created or determined by a statutory provision of title 11." *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). A proceeding "arising in a title 11 case" is one that is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."

---

[7]Rec. Doc. No. 13, p. 6.

6

*Id.* at 97.[8]

"A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002). For "related to" jurisdiction to attach, "the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999). Accordingly, a lawsuit filed after bankruptcy proceedings are closed is not "related to" a title 11 case because there is no longer a bankruptcy estate to affect. *Id.; Trahan v. Devon Energy Prod. Co.*, No. 08-1562, 2009 WL 56911, at *4 (W.D. La. Jan. 6, 2009).

In April, 2007, the U.S. Bankruptcy Court for the Eastern District of Louisiana closed Edward Bissau Mendy and Cheryl Ann Gerard Mendy's case after the trustee certified that "no funds or assets of the estate remain."[9] Given that the bankruptcy estate no longer exists and did not exist when Rhodes filed this lawsuit in 2008, this matter will have no conceivable effect on the administration of the bankruptcy estate. Rhodes' lawsuit is,

---

[8]The United States Court of Appeals for the Fifth Circuit has equated cases "arising in" or "arising under" title 11 with "core proceedings" that "invoke[] a substantive right provided by title 11" or "by [their] nature, could arise only in the context of a bankruptcy case." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002).

[9]Rec. Doc. No. 43-5, p. 1.

therefore, not "related to" the bankruptcy case. This Court does not have § 1334 jurisdiction merely because the lawsuit will affect the debtors, Edward Bissau Mendy and Cheryl Ann Gerard Mendy. *See Bass*, 171 F.3d at 1022; *Wood*, 825 F.2d at 94 ("To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor.").

Nonetheless, § 1334 jurisdiction may continue after the estate is closed if the proceeding would "arise under" title 11. *Bradley v. Bradley*, 989 F.2d 802, 804 (5th Cir. 1993). "Courts have held that actions to enforce the discharge injunction are core proceedings" that "arise under" title 11 and, therefore, establish federal jurisdiction.[10] *Nat'l Gypsum Co. v. NGC Settlement Trust & Asbestos Claims Mgmt Corp.*, 118 F.3d 1056, 1063-64 (5th Cir. 1997)(citations omitted); *see also* 28 U.S.C. § 157(b)(2)(I)(listing "determinations as to the dischargeability of particular debts" as a core proceeding). As such, a debtor may remove a case, pursuant to 28 U.S.C. § 1452[11], based on the need to determine whether a

---

[10] Section 524(a) provides that a discharge order "operates as an injunction against the commencement or continuation of an action" to collect any debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Courts deem such injunction a substantive right conferred by the Bankruptcy Code. *Nat'l Gypsum Co. v. NGC Settlement Trust & Asbestos Claims Mgmt Corp.*, 118 F.3d at 1063.

[11] Section 1452 provides:
> (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

particular debt has been discharged. *In re Kewanee Boiler Corp.*, 270 B.R. 912, 918 (Bankr. N.D. Ill. 2002); *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D.N.C. 2000); *Reyes v. Texas*, No. 05-50590, 2007 WL 1040584, at *2 (Bankr. S.D. Tex. Mar. 30, 2007).[12]

Although defendants raise the issue of dischargeability in their opposition to remand, the Court is not satisfied that jurisdiction exists under § 1334. Defendants submitted a July 20, 2006 order from the U.S. Bankruptcy Court, granting Edward Bissau Mendy and Cheryl Ann Gerard Mendy a discharge from their debts.[13] Defendants, however, failed to provide any evidence indicating that

---

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

[12] Once a bankruptcy case is closed, a debtor may (1) assert the discharge as an affirmative defense in a pending state court case, (2) remove the dischargeability defense or the entire state court case under 28 U.S.C. § 1452(a), (3) move to reopen the bankruptcy case, or (4) bring an adversary complaint in the bankruptcy court to enforce the statutory discharge injunction. *In re Kewanee*, 270 B.R. at 918; *In re Toussaint*, 259 B.R. at 101; *Reyes*, 2007 WL 1040584, at *2.
   The Court notes Rhodes' argument that, pursuant to the well-pleaded complaint rule, a case may not be removed if the defendant asserts federal jurisdiction based on the affirmative defense of claim preclusion due to a bankruptcy order. *In re LJM2 Co-Invest., L.P.*, 319 B.R. 495 (Bankr. N.D. Tex. 2005)(citing *Rivet*, 522 U.S. 470, 118 S. Ct. 921, 139 L. Ed. 2d 912). In *LJM2*, the U.S. Bankruptcy Court relied upon the U.S. Supreme Court's decision in *Rivet* to find that a § 1452 removal was improper even if the court had § 1334 jurisdiction because the complaint was removed on the basis of federal defenses, such as the bankruptcy court's confirmation of a reorganization plan and the court's releases and discharges. *Id.* at 501. The U.S. Supreme Court's decision in *Rivet*, however, neither addresses § 1334 jurisdiction nor discusses proceedings arising under title 11, such as dischargeability of debts. *See also Foster Poultry Farms, Inc. v. Int'l Bus. Machines Corp.*, No. 06-0680, 2006 WL 2769944, at *7 (E.D. Cal. Aug. 1, 2006).

[13] Rec. Doc. No. 45-2, p. 23.

9

the debt that is the subject of this lawsuit was discharged by the July 20, 2006 order.[14] Accordingly, defendants have failed to demonstrate that this lawsuit arises under title 11 and defendants have not carried their burden in asserting this Court's jurisdiction.

Defendants contend that the obligations that Edward Bissau and Cheryl Ann Gerard Mendy executed in 1998 and 1999, which Regions Bank assigned to Rhodes, pre-dated their bankruptcy petition and were, therefore, discharged by the July, 2006 discharge.[15] Defendants' argument that their debt obligations preceded their bankruptcy filing indicates their misunderstanding of Louisiana's collateral mortgage scheme.

As discussed above, Rhodes seeks to enforce a 1998 collateral mortgage note, which was signed by Edward B. Mendy as a member of Mendy Properties, L.C., following defendants default on a hand note, which was personally signed by Edward Bissau Mendy and Cheryl Ann Gerard Mendy in December, 2003.[16] The Louisiana Supreme Court has explained that "money is not directly advanced on the [collateral mortgage] note that is paraphed for identification with

---

[14] The fact that a document identifies Regions Bank, which assigned the collateral mortgage and collateral mortgage note to Rhodes, as a creditor does not show that the debt sought to be enforced by this lawsuit was discharged. Rec. Doc. No. 45-2, p. 11.

[15] Rec. Doc. No. 13, p. 17. The Court notes that the collateral mortgage and collateral mortgage note are dated November, 1998. Although it does not affect the Court's analysis, the Court is not aware of a 1999 obligation.

[16] Rec. Doc. No. 1-2, pp. 2-3, 8.

the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are Pledged [sic] to secure a debt." *First Guaranty Bank v. Alford*, 366 So. 2d 12991302 (La. 1979).[17] The Louisiana Supreme Court further explained in *Texas Bank of Beaumont v. Bozorg*:

> [The collateral] mortgage does not directly secure an existing debt, but is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. Because the mortgagor, after executing the collateral mortgage and the collateral mortgage note, pledges the collateral mortgage note as security for a debt, usually represented by a separate hand note, the collateral mortgage scheme combines the security devices of pledge and mortgage.

457 So.2d 667, 671 (La. 1984).

---

[17]The Louisiana Supreme Court explains in *Alford*:
> A mortgage is an accessory right which is granted to the creditor over the property of another as security for the debt...Unlike the other two forms of conventional mortgages, a collateral mortgage is not a "pure" mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
>
> A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a "ne varietur" note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
>
> Up to this point, a collateral mortgage appears to be both identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are Pledged [sic] to secure a debt. 366 So. 2d at 1302.

11

Accordingly, it is the December, 2003 hand note, not the 1998 collateral mortgage note, that represents the debt. Edward Bissau and Cheryl Ann Gerard Mendy obligated themselves through this hand note after filing a chapter 11 bankruptcy petition in April, 2003[18] **and** after the chapter 11 bankruptcy proceedings were converted to chapter 7 proceedings in June, 2003.[19] Therefore, the hand note signed by Edward Bissau and Cheryl Ann Gerard Mendy created a post-bankruptcy petition debt. An attachment to the July, 2006 discharge order explains that if the case "was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy was converted."[20] As such, defendants have not demonstrated that Rhodes' lawsuit, which seeks to enforce a post-petition debt, arises under title 11 or arises in a title 11 case.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Rhodes' motion to remand is **GRANTED** as this Court lacks subject matter jurisdiction over the above-captioned case and the matter shall be remanded to Orleans Parish Civil

---

[18]Rec. Doc. No. 45-2, p. 2.

[19]Rec. Doc. No. 45-2, p. 7.

[20]Rec. Doc. No. 45-2, p. 24. Generally, "[a] discharge in a chapter 7 bankruptcy case relieves a debtor from liability for all debts that arose before the date of the filing of the petition except...." *Reyes,* 2007 WL 1040584, at *2.

District Court.

New Orleans, Louisiana, April  30th  , 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**